J-S37020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES LEE TURNER | : | |
| | : | |
| Appellant | : | No. 2778 EDA 2019 |

Appeal from the Judgment of Sentence Entered August 29, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005117-2018

BEFORE: SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: Filed:December 24, 2020

Appellant James Lee Turner appeals from the judgment of sentence imposed following his convictions for simple assault and harassment.[1] Appellant argues that the trial court erred when it denied his motion to dismiss the charges on double jeopardy grounds. We affirm.

The trial court summarized the facts and procedural history of this case as follows:

Appellant was arrested and charged with aggravated assault, simple assault, strangulation, and a lesser summary charge of harassment. After several continuances[2], the case was brought to trial on April 22, 2019. On that date, a jury was chosen and seated. After attorneys for both sides made opening

---

[1] 18 Pa.C.S. §§ 2701(a)(1) and 2709(a)(1), respectively.

[2] Appellant's preliminary hearing was held on August 22, 2018 and trial was initially scheduled for January 3, 2019.

statements[3],the trial was adjourned for the day. Immediately after adjournment, the prosecuting attorney and the affiant[, Officer Kelli Fronk] discussed the case. During this discussion, it was determined the affiant had taken additional investigative actions which were unknown to the prosecuting attorney. These actions were contained in a supplemental report which had not been provided to the District Attorney's Office. The prosecuting attorney immediately notified defense counsel by e-mail of the additional investigation.

The next day, April 23, 2019, [the trial court] held a hearing. At this hearing, the affiant testified that her supplemental police report was not included with the initial incident report provided to the District Attorney's Office, and thereafter, to [Appellant] during the discovery process. The supplemental report was prepared more than six months after the initial report and may not have existed at the time the initial report was provided in discovery. The supplemental report described her attempt to locate and interview witnesses to the alleged assault. More specifically, she spoke with a private security guard who had been working in the welfare office where and when the assault had allegedly occurred. The security guard stated he worked from opening to closing and there was no assault or fight. The security officer confirmed there were no surveillance cameras inside the office. The officer testified the failure to provide the supplemental report was "an oversight." At the conclusion of the hearing, [the trial court] granted Appellant's motion for a mistrial, reduced his bail to a nominal amount pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure, and deferred further action pending the filing of a written motion.

Appellant filed a motion to dismiss all charges on grounds of double jeopardy. [The trial court] held a hearing on this motion on June 13, 2019. At this hearing, [Officer Fronk] clarified her supplemental police report was dated February 21, 2019. The officer also swore under oath she did not intend to withhold her report to prejudice [Appellant]. Appellant's motion was denied and dismissed by an order dated June 25, 2019.

---

[3] Appellant's counsel centered his opening argument on a theory that the investigating officer did not attempt to identify any eyewitnesses. **See** N.T., 4/23/19, at 5.

- 2 -

Thereafter, Appellant was tried before a jury beginning on August 19, 2019. Appellant was found guilty of simple assault by the jury and the summary charge of harassment by the trial judge. The jury found Appellant not guilty of charges of strangulation and aggravated assault. Appellant was sentenced only on the charge of simple assault to serve a term of imprisonment in the Bucks County Correctional Facility for not less than six (6) nor more than twenty-three (23) months, with credit for approximately thirteen months['] time served since August 1, 2018.

Appellant timely filed an appeal to the Superior Court of Pennsylvania and complied with [the trial court's order] issued pursuant to Rule 1925(b) of the Rules of Appellate Procedure.

Trial Ct. Op., 2/24/20, at 1-3 (footnotes omitted and some formatting altered).

Appellant presents the following issue for our review.

Whether the trial court erred by denying Appellant's motion to dismiss all charges pursuant to the double jeopardy clauses of both the federal and state constitutions where the Commonwealth caused a mistrial by intentionally withholding from Appellant exculpatory police reports until after Appellant's trial began[.]

Appellant's Brief at 4 (formatting altered).

Appellant argues that double jeopardy precluded his retrial for the same offenses after the trial court declared a mistrial due to misconduct attributable to the Commonwealth.[4] Appellant concedes that the prosecuting attorney provided the defense with the supplemental report in a timely manner. **Id.** at

_____

[4] In Appellant's first trial, the trial court determined that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963) by failing to disclose the exculpatory supplemental report. Trial Ct. Op. at 4. The Commonwealth argued that the report was cumulative and not material. **Id.** The trial court reasoned that "testimony of an independent, impartial witness that directly repudiates the victim's account on an incident underlying the criminal charges at issue is clearly material" and granted Appellant's request for a mistrial. **Id.**

16. However, Appellant asserts that the prosecution bears responsibility for the omission of the police department because "both entities represent the Commonwealth for purposes of this prosecution." *Id.* at 15.

Appellant continues that Officer Fronk intentionally withheld the supplemental police report to prejudice Appellant and deny him a fair trial. *Id.* at 13-14. Appellant contends that this case does not involve a complex investigation with multiple participating police officers or departments. *Id.* at 17. Appellant argues that because the investigation involved a single officer from a single police department, the simplicity of this investigation serves as "strong circumstantial evidence that [Officer Fronk] intentionally withheld her February 21, 2019 supplemental report." *Id.* Accordingly, Appellant concludes that his conviction and sentence should be vacated and all charges dismissed with prejudice. *Id.* at 19.

The Commonwealth responds that, while mistrial was warranted based on a *Brady* violation, Appellant's double jeopardy claim is meritless. Commonwealth's Brief at 7. The Commonwealth asserts that it neither intentionally nor recklessly withheld exculpatory evidence to deprive Appellant of a fair trial. *Id.* The Commonwealth points out that the prosecuting attorney promptly notified Appellant's counsel of the undisclosed report. *Id.* at 13.

Further, the Commonwealth maintains that the late disclosure was "the product of Officer Fronk's oversight and swiftly corrected following the error[']s revelation." *Id.* The Commonwealth maintains that the late disclosure was not carried out with the intention to deny Appellant a fair trial

nor did its actions, according to the Commonwealth, demonstrate a conscious disregard for a substantial risk that Appellant would be denied a fair trial. *Id.* at 14.

We apply the following standard:

An appeal grounded in double jeopardy raises a question of constitutional law. This Court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is de novo. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Adams*, 177 A.3d 359, 370 (Pa. Super. 2017) (citation omitted and some formatting altered).

In determining whether double jeopardy bars retrial following a mistrial, our Supreme Court has set forth the following standard.

We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial.

*Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992). In *Adams*, this Court acknowledged that the police can be responsible for a *Brady* violation and articulated:

> We have no question that if a *Brady* violation is committed by a prosecutor, it can result in a dismissal on double jeopardy grounds if it is shown that the prosecutor intended to deprive the defendant of a fair trial. Although we have found no instance in which we have held that intentional misconduct by the police also should warrant dismissal of the charges under a double jeopardy analysis, we see no reason to foreclose that possibility. Prosecutors must perform their duties under *Brady* in conjunction with the police, and a *Brady* violation may occur where evidence in the possession of the police is not disclosed to the defendant, even if the prosecutor did not know about it.

*Adams*, 177 A.3d at 372 (citations and footnote omitted).

In addition, our Supreme Court recently expanded the *Smith* standard in *Commonwealth v. Johnson*, 231 A.3d 807 (Pa. 2020).[5]

> Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprived the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result.

*Johnson*, 231 A.3d at 826.

In *Johnson*, the prosecution alleged that the defendant shot and killed the victim at close range. *Id.* at 812. During the investigation, police recovered a black baseball cap and a red baseball cap. *Id.* at 810-11. The

---

[5] We note that the trial court did not have the benefit of our Supreme Court's decision in *Johnson* before issuing its Rule 1925(a) opinion.

black cap had been worn by the victim and had his blood under the brim. ***Id.*** at 811. The red cap was recovered several yards away from the victim's body and had the defendant's sweat on the band. ***Id.*** at 810-11. Police logged each cap under separate property receipts with distinct numbers. ***Id.*** at 810-11, 827. The case went unsolved for several years before an informant directed police to the defendant. ***Id.*** at 811. At trial, the prosecuting attorney proceeded under the theory that one cap, the red one, had both the victim's blood and the defendant's sweat on it. ***Id.*** at 811-13. The Commonwealth's forensics expert also erroneously indicated that the blood and sweat DNA evidence were found on the same cap. ***Id.*** at 812. Further, an investigating officer testified that he saw blood under the brim of the red cap when he recovered it. ***Id.*** A jury convicted the defendant and sentenced him to death. ***Id.*** at 813.

Following the release of a forensics lab report, which revealed that a second cap had been analyzed, the Commonwealth agreed the defendant was entitled to a new trial and the defendant moved to dismiss the charges. ***Id.*** Our Supreme Court held that retrial was barred and outlined two significant errors made by the prosecuting attorney.

> [F]irst, there was a notable discrepancy between the property receipt numbers for the two caps. The prosecutor was aware this meant that the associated results reflecting the presence of the victim's blood and [the defendant]'s DNA might have related to different pieces of physical evidence. Yet, in the face of this information, he never sought to verify his working hypothesis that the receipt numbers pertained the same baseball cap. He did not even notice this error at the preliminary hearing when he had in his possession property receipt number 2425291,

which clearly stated that it was associated with a black baseball cap. Second, in preparation for a capital case, the prosecutor did not obtain a criminalistics report which would have summarized the evidence connected with the matter and revealed that there were two different caps involved.

*Id.* at 826-27. The Court determined that the Commonwealth's "almost unimaginable mistakes," though unintentional, were "strongly suggestive of a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial." *Id.* at 826-27.

Instantly, in its Rule 1925(a) opinion the trial court addressed its denial of Appellant's motion to dismiss the charges before Appellant's second trial.

Initially, [the trial court] note[d] the supplemental police report was dated more than six months after the initial police report. The initial police report was properly provided to the defense during the discovery process. The reason for the failure to include the supplemental report in the discovery process is unknown. It may not have existed at the time discovery was provided to the defense.

Both sides agree the prosecuting attorney did not know of its existence when trial began. There were no pre-trial or other evidentiary hearings in this case. At the time of trial, the police affiant was unaware her supplemental report had not been provided to the defense or prosecuting attorney. It became obvious during defense counsel's opening statement that he was unaware of the police officer's action described in her supplemental report. The police affiant spoke with the prosecuting attorney after opening statements and disclosed the actions detailed in her supplemental report. The prosecuting attorney immediately disclosed the existence of the supplemental report to defense counsel by e-mail. At no time did anyone associated with the prosecution deny the existence of a supplemental report or the failure to provide said report to the defense. Testifying under oath in hearings related to Appellant's Motion to Dismiss, the affiant swore the failure to provide the

supplemental report in discovery was just "an oversight" and that she did not "intend to suppress that report to prejudice [Appellant]." [The trial court] listened to the officer's testimony carefully. She appeared honest and sincere. Her testimony was consistent with other evidence and [the trial court] believed her.

Accordingly, [the trial court] determined that although errors occurred, those errors were unintentional. [The trial court] also concluded there were no actions taken that were designed to deprive Appellant of a fair trial. As such, the remedy of dismissal in this case would be overly harsh and would not promote the goals contemplated by discharge under double jeopardy, foreclosing systematic maltreatment.

*Id.* at 7-8 (footnotes omitted).

Based on our review of the record, we conclude that the record supports the trial court's conclusion that the Commonwealth's errors were unintentional. *See Smith*, 615 A.2d at 325.

As noted by the trial court, the prosecuting attorney promptly notified Appellant's counsel of Officer Fronk's supplemental report describing her contact with the security guard when she brought it to the prosecutor's attention. *See* Trial Ct. Op. at 1. Based on this record, it appears that the prosecutor did not previously know the supplemental report existed. Trial Ct. Op. at 7.

Officer Fronk testified that she is a ten-year police veteran and has investigated and testified in more cases that she could count. N.T. 6/13/19, at 8. The officer explained that she typed the supplemental report as an update to the incident report six months after the charges were filed. *See id.* at 7; Trial Ct. Op., at 7. Officer Fronk testified that she was not aware that Appellant had already had two scheduled trial dates prior to the date on which

she wrote the report. N.T., 6/13/19, at 7. However, Officer Fronk stated that she did not intend to withhold the report to prejudice Appellant. *Id.* at 10.

Here, the trial court credited the testimony of Officer Fronk. Trial Ct. Op. at 8. Based on our review, we conclude the record supports the trial court's credibility determination that the Commonwealth's actions were not intentionally undertaken to deprive Appellant of a fair trial. *See Smith,* 615 A.2d at 325; *see also Adams*, 177 A.3d at 370.

Further, applying the *Johnson* standard, we find that the Commonwealth's actions do not reflect a conscious disregard for the substantial risk that Appellant would be deprived of a fair trial. *See Johnson*, 231 A.3d at 826. As noted above, the trial court credited Officer Fronk's testimony that she was unaware that the prosecuting attorney did not have the supplemental report. Trial Ct. Op. at 7. Following opening arguments, Officer Fronk provided the report to the prosecuting attorney when asked if there were any additional reports documenting any further investigation. N.T. 6/13/19, at 10. Upon receipt, the prosecutor notified Appellant's counsel and provided the missing supplemental report. Trial Ct. Op. at 1.

Based on our review of the record, the instant case is distinguishable from *Johnson* in that there is no indication that the prosecuting attorney should have known or had access to the supplemental report, unlike the property receipts in *Johnson*, which were in the prosecutor's possession. *Id.* at 7. Notably, Officer Fronk prepared the supplemental report approximately five months after Appellant's preliminary hearing and one month after

Appellant's initial trial listing.  N.T. 6/13/19, at 7.  Accordingly, the record suggests that the prosecutor did not have access to the report until the April 2019 trial date.  ***Id.*** at 13.

Further, the investigating officer in ***Johnson*** testified to observations he did not make based on an assumption that the prosecutor's single hat theory was correct.  ***See Johnson***, 231 A.3d at 827 n.14.  Here, by contrast, Officer Fronk promptly acknowledged the error and provided the supplemental report to the prosecutor and Appellant's counsel as soon as she discovered the oversight.  Trial Ct. Op., at 7.

Unlike the case in ***Johnson***, the record reflects the Commonwealth's diligence in discovering its error and promptly correcting it.  Accordingly, we conclude that the errors in this case do rise to the level of reckless disregard, and we agree with the trial court that retrial was not barred.  ***See Johnson***, 231 A.3d at 826.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/20

- 11 -